**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-367 |
| | § | C.A. No. C-05-430 |
| GRANT LAVERNE LOCKETT, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Grant Laverne Lockett's ("Lockett") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 15),[1] which was received by the Clerk on August 22, 2005. The Court ordered the government to respond, and the government filed a response in which it also moves for summary judgment, or, in the alternative, for dismissal of Lockett's motion. (D.E. 20). To date, Lockett has not filed a reply.[2] As discussed in detail herein, all of Lockett's claims, except one, are subject to dismissal because he waived his right to file those claims. His other claim, which falls outside the scope of his waiver, fails on its merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Lockett a Certificate of Appealability ("COA").

---

[1] Dockets entries refer to the criminal case, C-04-cr-367.

[2] The only other filing in the case was a "Notice" filed by the government, in which the government gave notice of its receipt of correspondence sent by Lockett directly to the United States Attorney's Office. (D.E. 17). In the correspondence, attached to the notice as Exhibit A, Lockett asks the AUSA for advice on what to do next in his "appeal," which the Court takes to be a reference to his § 2255 proceedings. Lockett explains that he was transferred between facilities and his legal papers and an inmate assisting him with his case were left behind at the former facility. Lockett is not asking for any relief from the Court in this filing, and he did not file it with the Court. Accordingly, the Court does not address the issues raised therein.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

### A.      Summary of Offense[3]

Lockett was stopped by Corpus Christi Police Department Officers for a traffic violation. Upon contact, the officers observed the defendant to be visibly nervous and shaking.  As the officer on the driver's side was asking the defendant for his driver's license, the officer who had gone to the passenger side of the vehicle called out, "gun!" after seeing a long metal object on the front seat.[4] Lockett was ordered to exit the vehicle, and officers observed large bulges in each of Lockett's front pants pockets.  Upon questioning, Lockett stated that the bulges were cash, totaling approximately $10,000.  It was later determined that the amount of cash in his pockets was $8,747.

One of the officers also noticed in the bed of the truck a partially-opened black backpack with what appeared to be methamphetamine.  A search of the vehicle revealed an additional $26,028 in cash, a silver container containing .18 grams of marijuana, two laptop computers, three cellular telephones, night vision goggles, a police scanner, a fake Arizona driver's license, a Wells Fargo Security Guard Badge and a book titled, "The Big Book of Hiding Places."

Lockett claimed responsibility for the contraband in his vehicle, including the methamphetamine, which had a net weight of 7.95 kilograms, with a 64 percent purity (equal to 4.93 kilograms of actual methamphetamine).  The defendant further stated that he had already sold 3.5 pounds of methamphetamine, which accounted for the cash found on his person and in the vehicle.

_____

[3]  The offense conduct as set forth herein is derived from Paragraphs 3-4 of the Presentence Investigation Report ("PSR").

[4]  The object turned out to be a lighter.

2

**B.**     **Criminal Proceedings**

On July 14, 2004, Lockett was charged in a single-count indictment with charged with knowingly possessing with intent to distribute approximately 8.41 kilograms of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.  (D.E. 1).  On August 13, 2004, he pleaded guilty pursuant to a written plea agreement with the government.  (D.E. 8, 9).  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive the maximum credit for acceptance of responsibility, and to recommend a sentence at the lowest end of the applicable guideline range (D.E. 9 at ¶ 2).

The plea agreement included a voluntary waiver of Lockett's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States as set forth in Title 18 U.S.C. § 3742(b).  Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 9 at ¶ 7) (emphasis in original).  The agreement was signed by both Lockett and his counsel.

At Lockett's rearraignment, the Court specifically inquired as to whether his plea agreement included a waiver of the right to appeal and 2255 rights, and the Assistant United States Attorney Robert M. Galvan ("AUSA" or "Mr. Galvan") responded that it did.  (D.E. 18, Rearraignment Transcript ("R. Tr.") at 20).  The Court then questioned Lockett under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

**THE COURT:** Well, I want to make sure, before I ask the U.S. Attorney assigned to your case to outline your plea agreement, that you understand that if you go forward you're giving up some very valuable rights, besides the rights that I've just told you about. One of which is the right to appeal.

You can only appeal if I sentence you over the statutory maximum or if I upwardly depart from the guidelines without a motion from the U.S. Attorney. You're also giving up a very valuable right of post conviction remedies, called a statutory 2255 or writ of habeas corpus. You would ordinarily be able to come in and try to set aside your sentence and/or your conviction by claiming through this remedy a constitutional problem or jurisdictional problems or such matters as ineffective assistance of counsel.

But if you go forward with this guilty plea, and with this plea agreement, you'll give up those rights forever.

Do you understand that ... Mr. Lockett?

**DEFENDANT LOCKETT**: Yes, ma'am.

(R. Tr. at 20-21).

Additionally, the written plea agreement was summarized by the AUSA, including a statement regarding the waiver: "Both the defendants waive their right to appeal, as well as their rights under 2255. However, they do retain the ability to appeal a sentence imposed above the statutory maximum or an upward departure from the sentencing guidelines which had not been required by the United States Attorney." (R. Tr. at 22-23). Lockett testified that the summarized agreement was his plea agreement, that he understood it completely, that it was the entire agreement, and that there were not any other promises or agreements made to him that were not contained in that written agreement, including any promises of leniency or a motion for downward departure for substantial assistance or safety valve. (R. Tr. at 23-24)

The Court then showed Lockett a written copy of the plea agreement. Lockett testified that the agreement was his, that he had signed it, and that he had read it completely and discussed it completely

with his attorney before signing it.  (R. Tr. at 24-25).  It is clear from the foregoing that Lockett's waiver of § 2255 rights was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on November 8, 2004.  (D.E. 13).  The PSR calculated the total offense level to be a 35. Coupled with Lockett's criminal history category of two, the guideline range for a term of imprisonment was 188 to 235 months.  There were no objections to the PSR and Lockett told the Court at sentencing that there were no mistakes in it.  (D.E. 19, Sentencing Transcript  ("S. Tr.") at 5).

The Court sentenced Lockett to 188 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and imposed a fine of $50 and a $100 special assessment. (D.E. 13, 14).  Judgment of conviction and sentence was entered November 26, 2004. (D.E. 14).  Consistent with his waiver of appellate rights, Lockett did not appeal.  Lockett's timely § 2255 motion was received by the Clerk on August 22, 2005.

### III.  MOVANT'S ALLEGATIONS

In his motion, Lockett asserts a number of different claims of ineffective assistance of counsel. First, he claims that his retained counsel, Robert A. Berg was ineffective because he failed to file an appeal despite instructions from Lockett to do so.  (D.E. 15 at 11-12).

Second, he claims that his counsel failed to advise him as to what his exposure under the sentencing guidelines would be, and, therefore, that his decision to plead guilty was not a "knowing" one.  (D.E. 15 at 12-13).  Instead, he claims his attorney informed him that, due to his debriefing and cooperation, he would receive a term of imprisonment of around 120 months.

Third, Lockett alleges that his attorney was deficient for failing to adequately investigate the "relevant actions" of the traffic stop that led to his arrest and indictment in this case. (D.E. 15 at 13). He does not identify, however, what facts further investigation would have revealed. He also makes the general claim that his counsel showed "drastically reduced" interest in representing him once he received his retainer. (D.E. 15 at 13).

Fourth, he challenges his attorney's conduct at sentencing. Specifically, he claims that he did not receive or read the PSR until about one hour before sentencing. He also claims that his attorney did not properly consult with him during the "pre-sentencing phase" and generally failed to "prepare a defense." (D.E. 15 at 14). He further alleges that his attorney should have made unspecified objections at sentencing.

Fifth, he claims that his retained counsel had a "conflict of interest" throughout the entire proceeding because his counsel did not believe the statements Lockett made to him. Lockett alleges this his counsel believed that Lockett was fabricating statements and did not clarify his suspicions by consulting with Lockett. Lockett claims that this led to less than zealous advocacy on the part of his counsel.

The government has moved for summary judgment against Lockett's motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations.

For the reasons set forth herein, Lockett's claims fail.

# IV. DISCUSSION

## A.      28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."   United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Lockett has procedurally defaulted his claims by failing to appeal.  Rather, the Court concludes that he validly waived all of the claims unrelated to his plea, and thus it does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of Booker).

His claim that he received ineffective assistance of counsel when entering into the plea agreement, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver.  See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea

agreement, despite an appeal-waiver provision in the plea agreement).  Thus, the Court turns first to this claim.

**B.      Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Lockett argues that his attorney was deficient for failing to tell him of his true sentencing exposure and for mistakenly informing him that he should receive a sentence of about 120 months. When viewing the record as a whole, it is clear that Lockett cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Lockett must show that, absence his counsel's deficiencies, he would have proceeded to trial.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Lockett's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Lockett testified that he had had enough time to talk with his attorney, that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 13-14). The Court informed Lockett of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 17-20).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Lockett the maximum punishment that he might receive. Specifically, the Court informed him that he faced a mandatory minimum of ten years in prison, and could be sentenced to a maximum of life imprisonment and a maximum fine of $ 4 million. The Court also informed him that there was a mandatory $100 special assessment, and a minimum supervised release term of five years, with a maximum supervised release term of life. (R. Tr. at 27). Lockett testified that he understood. (R. Tr. at 27).

Lockett testified that no one had threatened him or forced him to plead guilty, that no one had promised him leniency for pleading guilty, that he understood that if his sentence was more severe than he expected, he would still be bound by his plea, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 24, 26, 30-32).

The transcript also establishes that Lockett understood that only the Court could determine the sentence that he would ultimately receive and that any one else's estimate would not be binding on the Court:

9

> **THE COURT:** Do understand, sir, that I'm not a party to this document. It's not binding on me in any way. And you won't know whether I'll follow any of those recommendations until time of sentencing, when it's too late for you to have any right to withdraw your plea. In fact, as soon as you enter your plea, it is too late for you to have any right to withdraw it, even if the sentence is more severe than you expected. Do you understand that ... Mr. Lockett?
>
> **DEFENDANT LOCKETT**: Yes, ma'am, I do.

(R. Tr. at 26). Highly relevant to Lockett's claims here, the Court also asked:

> **THE COURT:** Do you understand your attorney's opinion of the guidelines is not necessarily that of mine ... Mr. Lockett?
>
> **DEFENDANT LOCKETT:** Yes, ma'am.

(R. Tr. at 30).

Lockett's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Lockett's sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew that any estimates by his attorney were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced or induced him to plead guilty.

Furthermore, at sentencing, after having seen the PSR and its recommended sentencing, Lockett reaffirmed that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 4-5). Indeed, in response to a question from the Court as to whether his attorney still came to see him in jail and still took his phone calls, Lockett responded: "He's an excellent attorney." (S. Tr. at 4). He also testified that he was ready for sentencing and, after his attorney stated that there were no objections

to the PSR, Lockett testified that there were no mistakes in the PSR.  (S. Tr. at 5).  All of these facts further undermine his claim that his attorney gave him incorrect advice concerning his likely sentence.

Notably, Lockett does not affirmatively allege that he would have insisted on proceeding to trial had he believed he would be sentenced to 188 months.  In any event, any belated claim that he would have proceeded to trial instead of pleading guilty defies logic, given the likely result had he proceeded to trial.  That is, had he gone to trial, it is highly likely that the jury would have found him guilty, based on the evidence in this case.  Lockett was stopped by law enforcement agents while driving a car that contained large amounts of cash and methamphetamine, as well as surveillance equipment.  Large bundles of cash were found in his front pants pockets, and drugs were found in a vehicle in which he was the sole occupant.  Upon being stopped and questioned, he admitted to the police officers that he had just sold methamphetamine.  Had he gone to trial, this overwhelming evidence almost certainly would have resulted in a guilty verdict.

Had that occurred, his sentencing after a trial would have been more harsh.  He would have had the same offense level, except that he would not have received a three-level reduction for acceptance of responsibility.  Thus, his resulting offense level would have been 38 instead of 35, and his guideline range would have been 262 to 327 months imprisonment.  Even if the Court had elected the low end of this guideline range, his sentence still would have been greater than the 188 months he received.  Thus, his sentence, in all likelihood, would have been higher.  For all of these reasons, it simply does not make sense that he would have made the choice to go to trial, instead of choosing -- quite logically --  to plead guilty.

Additionally, to the extent that Lockett is claiming his counsel "promised" him he would receive a 120-month sentence, he could proceed on that claim only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).  Specifically, a defendant may seek

11

habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110.  A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id.  Lockett has not alleged any facts about the identity of any witnesses to the promise, and has not provided any evidence showing the merit of his allegations.  Thus, he would be unable to obtain relief under the Cervantes exception.

In short, it is clear that Lockett cannot show that he would have insisted on going to trial but for counsel's performance, despite his bare allegations now to the contrary.  Thus, Lockett cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Lockett's sole challenge to the validity of the plea agreement fails, his plea agreement, and his waiver of § 2255 rights contained therein, is valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

## C.     Waiver of § 2255 Rights

It is clear from the rearraignment that Lockett understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 18-19).  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Lockett's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his wavier was knowing and voluntary.  Lockett's remaining claims clearly fall within the scope of that waiver.

In sum, while Lockett's ineffective assistance claims as to his plea is denied on the merits, his remaining claims of ineffective assistance fall within the scope of his waiver. Therefore, they are not properly before the Court. <u>See generally</u> <u>Wilkes</u>, <u>supra</u>; <u>White</u>, <u>supra</u>; <u>McKinney</u>, <u>supra</u>. For these reasons, Lockett's § 2255 motion is DENIED in its entirety.

**D.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Lockett has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Lockett is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

## V. CONCLUSION

For the above-stated reasons, Lockett's motion under 28 U.S.C. § 2255 (D.E. 15) is DISMISSED WITH PREJUDICE. The Court also DENIES Lockett a Certificate of Appealability.

Ordered this 24th day of February, 2006.

Janis Graham Jack
United States District Judge